162 Cal.App.4th 1263 (2008)
THE PEOPLE, Plaintiff and Respondent,
v.
FRANK WILLIAM JOHNSON, Defendant and Appellant.
No. D050751.
Court of Appeals of California, Fourth District, Division One.
May 14, 2008.
*1272 Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry Carlton and Bradley A. Weinreb, Deputy Attorneys General, for Plaintiff and Respondent.

*1273 OPINION
McCONNELL, P. J.
Frank William Johnson challenges an order declaring him to be a sexually violent predator (SVP) under the Sexually Violent Predator Act (SVP Act) (Welf. & Inst. Code, § 6600 et seq.).[1] He contends he was not lawfully in custody at the time the district attorney filed the petition and that his indeterminate commitment is unconstitutional because it violates his rights of due process and equal protection, and the prohibitions against ex post facto laws and double jeopardy. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND
Johnson was scheduled to be released from prison on December 2, 2005. The Department of Corrections and Rehabilitation (the Department) began screening Johnson for SVP status by April 2005 and forwarded screening documents to the Board of Prison Terms (now Board of Parole Hearings; hereafter Board) in early May 2005. The Board completed its screening in early October 2005, determined Johnson was a likely SVP and forwarded the matter to the State Department of Mental Health (DMH) for evaluation.
On November 10, 2005, DMH wrote to the San Diego County District Attorney's Office recommending that an SVP petition be filed against Johnson.
On December 1, 2005, the day before Johnson's scheduled release date, a hearing was held before the Board. The hearing officer explained the "sole purpose" of the hearing was to determine if there was probable cause to believe Johnson was an SVP within the meaning of the SVP Act and, if so, then to place a 45-day hold on Johnson. The hearing officer made a finding there was probable cause to believe Johnson was an SVP and imposed the 45-day hold. He noted the "45 days will allow the completion of the case by DMH, . . . referral to the county, . . . and a decision by the [district attorney], whether or not [it] want[ed] to file petition as an SVP."
The district attorney's office filed an SVP petition against Johnson on December 7, 2005.

*1274 DISCUSSION

I

Custody Requirement
(1) The SVP Act applies to a defendant who is in custody at the time the petition is filed. (§ 6601, subd. (a)(1).) The Department is generally required to start the process of screening a defendant for the likelihood of being an SVP[2] at least six months before the anticipated release date. (§ 6601, subd. (a)(1).) If the Department determines the defendant is a likely SVP, the defendant is referred to DMH for a full evaluation. (§ 6601, subd. (b).) If two mental health professionals at DMH agree the defendant "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," the director of DMH forwards a request for a petition for civil commitment to the county in which the defendant was convicted. (§ 6601, subd. (d).)
The designated counsel in the county, often the district attorney as in this case, reviews the director of DMH's request. (§ 6601, subds. (h), (i).) Counsel is required to notify DMH "of its decision regarding the filing of a petition for commitment within 15 days of making that decision." (§ 6601, subd. (l).) If counsel agrees with the recommendation to file a petition, then counsel files a petition for civil commitment in the superior court. (§ 6601, subds. (d), (i); People v. Hayes (2006) 137 Cal.App.4th 34, 42 [39 Cal.Rptr.3d 747].)
(2) A defendant's period of custody may be extended for 45 days on a showing of good cause "for full evaluation . . . ." (§ 6601.3.) Challenges to the lawfulness of the defendant's custody should be raised by an administrative appeal or by a petition for a writ of habeas corpus, rather than at the judicial proceedings on an SVP Act petition. (People v. Hedge (1999) 72 Cal.App.4th 1466, 1478-1479 [86 Cal.Rptr.2d 52]; see also People v. Talhelm (2000) 85 Cal.App.4th 400, 405 [102 Cal.Rptr.2d 150] [stating "it is well settled that one may file a petition for writ of habeas corpus in order to challenge confinement at a mental institution pursuant to several other involuntary commitment statutes"].)
The fact that a defendant was not legally in custody when an SVP petition was filed does not in and of itself require dismissal of the petition. The SVP *1275 Act states a petition "shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law." (§ 6601, subd. (a)(2).) "Thus, the Legislature has made it absolutely clear that . . . lawful custody [is not] a jurisdictional prerequisite to filing an SVP petition; a later judicial or administrative proceeding determination the custody was unlawful does not deprive the court of the power to proceed on an SVP petition if the custody status when the petition was filed was a result of a good faith mistake of law or fact." (People v. Wakefield (2000) 81 Cal.App.4th 893, 898 [97 Cal.Rptr.2d 221]; see People v. Hubbart (2001) 88 Cal.App.4th 1202, 1228 [106 Cal.Rptr.2d 490].) The defendant bears the burden of showing his custodial status was the result of bad faith. (People v. Hubbart, at pp. 1228-1229.)
(3) Here, we initially note that during the hearing on the 45-day hold, Johnson, who was represented by counsel, did not object to the imposition of the hold. As a general rule, a defendant waives errors by failing to bring a timely challenge. (People v. Marchand (2002) 98 Cal.App.4th 1056, 1060 [120 Cal.Rptr.2d 687].) This rule is designed to prevent the errors that could have been remedied had the issue been timely raised. (People v. Simon (2001) 25 Cal.4th 1082, 1103 [108 Cal.Rptr.2d 385, 25 P.3d 598].) Had Johnson raised the issue, the district attorney would have had some opportunity to file the petition before Johnson's scheduled release date and could have presented evidence to justify an extension. By not raising an objection at the hearing, Johnson essentially conceded that the Board had good cause to extend his commitment by 45 days.
Moreover, even if we were to conclude that Johnson did not waive the issue by failing to raise it at the hearing or by filing an administrative appeal or petition for a writ of habeas corpus, we would not reverse. Again, the deadlines stated in the SVP Act are not jurisdictional and Johnson was not entitled to dismissal of the petition unless the 45-day hold was ordered in bad faith. There was no bad faith here. The hearing officer, after finding there was probable cause to believe Johnson was an SVP, stated two reasons for imposing the 45-day hold: (1) completion of a full evaluation, and (2) providing the district attorney sufficient time to review and file a petition. Johnson argues with some persuasiveness that a "full evaluation" had already been completed because both the Department and DMH had completed their evaluations.[3] However, section 6601.3 states that an individual may be retained in custody for up to 45 days beyond the "scheduled release date for *1276 full evaluation pursuant to subdivisions (c) to (i), inclusive, of Section 6601" (italics added), and subdivisions (h) and (i) of section 6601 address the designated attorney's review and decision to file a petition. Thus, the term "full evaluation" appears to encompass not only evaluation by DMH but also by the designated attorney. Moreover, even if the term "full evaluation" does not include the designated attorney's review, at worst the record shows a mistake of law or fact by the hearing officer in concluding that it could extend the release date to allow the designated attorney time for review. It appears the district attorney had not yet completed its review. Moreover, we find no bad faith in the hearing officer's decision to provide additional time to the district attorney since DMH did not send its recommendation to the district attorney until November 10, only three weeks before Johnson's scheduled release date, during a period when there were holidays.

II

Due Process
Johnson contends that imposition of an indeterminate commitment violates the constitutional guarantee of due process. He acknowledges the California Supreme Court in Hubbart v. Superior Court (1999) 19 Cal.4th 1138 [81 Cal.Rptr.2d 492, 969 P.2d 584] (Hubbart) held the SVP Act meets due process requirements, but he asserts Hubbart is no longer good law because subsequent amendments to the SVP Act have replaced the renewable two-year commitment with an indeterminate commitment and require the involuntarily committed individual to bear the burden of proving he is no longer mentally ill.[4] Basically, Johnson argues there must be periodic, automatic judicial reviews where the People bear the burden of proving that the committed individual continues to be a mentally ill and dangerous SVP.[5]

*1277 The SVP Act

(4) Prior to amendments in 2006, the SVP Act required the People to file a new petition for commitment every two years and to prove beyond a reasonable doubt that the defendant was an SVP. (Former §§ 6601, subd. (i), 6604, 6604.1; People v. Munoz (2005) 129 Cal.App.4th 421, 429 [28 Cal.Rptr.3d 295].) The Legislature amended the SVP Act to provide for indeterminate commitment terms for persons determined to be SVP's. (Stats. 2006, ch. 337, §§ 55, 56, 62.) The voters in the November 2006 general election approved Proposition 83, which also provided for indeterminate terms of commitment for SVP's. As a result of the 2006 amendments to the SVP Act, if the People bring a petition and prove beyond a reasonable doubt that an individual is an SVP, the individual is committed for an indefinite term. (Bourquez v. Superior Court (2007) 156 Cal.App.4th 1275, 1281 [68 Cal.Rptr.3d 142].)
Although the 2006 amendments eliminated the requirement for a new petition every two years, there are other procedures in the SVP Act that monitor the individual's status as an SVP and provide for conditional release or discharge. At least once a year, DMH must conduct an examination of the individual's mental condition and issue a report. (§ 6605, subd. (a).) At the individual's request, he or she may also be examined by an independent expert who is either retained by the individual or appointed by the court if the individual is indigent. (Ibid.) The annual report by DMH must "include consideration of whether the committed person currently meets the definition of a[n SVP] and whether conditional release to a less restrictive alternative or an unconditional release is in the best interest of the person and conditions can be imposed that would adequately protect the community." (Ibid.) DMH must file the report with the court and serve the report on the committed individual and the prosecuting agency involved in the initial commitment. (Ibid.)
(5) Under section 6605, if DMH determines as a result of the examination that the individual no longer is an SVP, it must authorize the individual to file a petition for judicial review. (§ 6605, subd. (b).) If the court finds probable cause for release, the individual is entitled to a de novo trial on his current status as an SVP. (§ 6605, subds. (b), (c).) At trial, the People have the burden of proving beyond a reasonable doubt that the individual is an SVP. (§ 6605, subd. (d).) If the People fail to meet their burden of proof, then the individual must be unconditionally released. (§ 6605, subd. (e).) Section 6605, subdivision (f) also provides that if "[DMH] has reason to believe that a person committed to it as a[n SVP] is no longer a[n SVP], it shall seek judicial review of the person's commitment pursuant to the procedures set forth in Section 7250 [petitions for habeas corpus] in the superior court from *1278 which the commitment was made. If the superior court determines that the person is no longer a[n SVP], he or she shall be unconditionally released and unconditionally discharged." (6) Additionally, under section 6607, if DMH determines the individual's mental condition has changed so that it is not likely he or she will commit predatory sexual violence while under treatment and supervision in the community, the director of DMH is required to forward a copy of the report to the designated attorney, the individual's attorney of record and the committing court. (§ 6607, subd. (a).) When such a report is filed with the court, the court is required to set a hearing. (§ 6607, subd. (b).) At the hearing, the individual has the burden of proof by a preponderance of the evidence. (§§ 6607, subd. (b), 6608, subd. (i).)
(7) Even without the concurrence of DMH, the individual may file a petition for release under section 6608, subdivision (a). Under section 6608, the court may deny the petition without a hearing if the individual previously filed a petition without the concurrence of DMH and the court finds the petition is frivolous or fails to show a change in the individual's condition. (§ 6608, subd. (a).) If the petition is not deemed frivolous and contains facts showing a changed condition, the court must hold a hearing "to determine whether the person committed would be a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior due to his or her diagnosed mental disorder if under supervision and treatment in the community." (§ 6608, subd. (d).) The burden of proof is on the committed person to prove his case by a preponderance of the evidence. (§ 6608, subd. (i).)

Due Process Analysis
(8) "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." (Morrissey v. Brewer (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 92 S.Ct. 2593].) To evaluate due process claims, the United States Supreme Court in Mathews v. Eldridge (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 96 S.Ct. 893] (Mathews), articulated a three-factor test that considers (1) the private interest that is affected by the state action; (2) the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value, if any, of additional or other procedural safeguards; and (3) the state's interest, including the function involved, and the fiscal and administrative burdens that the additional or other procedural requirement would raise. (Medina v. California (1992) 505 U.S. 437, 444 [120 L.Ed.2d 353, 112 S.Ct. 2572].) This test applies to involuntary civil commitments. (Addington v. Texas (1979) 441 U.S. 418, 425 [60 L.Ed.2d 323, 99 S.Ct. 1804].)

*1279 Private Interest

(9) The private interest here is a deprivation of liberty and "[i]t is clear that `commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" (Jones v. United States (1983) 463 U.S. 354, 361 [77 L.Ed.2d 694, 103 S.Ct. 3043], quoting Addington v. Texas, supra, 441 U.S. 418, 425.)[6] This liberty interest, however, is not absolute. (Kansas v. Hendricks (1997) 521 U.S. 346, 356 [138 L.Ed.2d 501, 117 S.Ct. 2072].) The state may involuntarily commit an individual if it proves by at least clear and convincing evidence that the individual is dangerous to others due to a mental illness. (Id. at p. 358; Addington v. Texas, supra, 441 U.S. at p. 433.)

Risk of Erroneous Deprivation
(10) In this case, the risk is that an individual will be erroneously held in a continuing commitment even though he or she is no longer a mentally ill and dangerous SVP. Johnson contends that due process requires the periodic filing of new petitions and judicial review where the People have the burden of proving beyond a reasonable doubt that the individual is an SVP. He claims that the post-2006 procedures in the SVP Act eliminating the periodic judicial hearings violates due process by providing for an indefinite commitment and shifting of the burden of proof to the individual to file a petition and prove by a preponderance of evidence that he or she is no longer a mentally ill and dangerous SVP.[7]
(11) It must be kept in mind that we are not addressing an initial hearing. Johnson is attacking procedures occurring after there has already been a finding beyond a reasonable doubt that he had qualifying criminal conduct and is both mentally ill and dangerous. Clearly, as to the qualifying criminal conduct, the changed procedures do not increase the risk of an erroneous determination since the judicial determination of the prior criminal conduct made at the initial commitment hearing will remain valid absent a subsequent showing of factual innocence. Further, from the determinations at the initial *1280 commitment hearing that the individual committed the prior criminal conduct and that it was due to a mental illness, it can be inferred, as a matter of common sense, that this condition of mental illness and dangerousness will continue into the future. (See Jones v. United States, supra, 463 U.S. 354, 366.) Indeed, a number of states have specifically recognized that the prognosis for mentally ill SVP's is generally poor and that they require long-term treatment. (Fla. Stat., § 394.910; Iowa Code, § 229A.1; Kan. Stat. Ann., § 59-29a01; Ramsey, California's Sexually Violent Predator Act: The Role of Psychiatrists, Courts, and Medical Determinations in Confining Sex Offenders (1999) 26 Hastings Const. L.Q. 469, 488.) In other words, the initial commitment hearing itself provides a significant level of due process protection since persons who are committed as SVP's are likely to remain mentally ill for a lengthy period.
Further, contrary to Johnson's assertion, due process does not necessarily require periodic adversarial hearings. (U.S. v. LaFromboise (8th Cir. 1988) 836 F.2d 1149, 1152.) The Supreme Court has recognized that regular examination of an involuntarily committed individual's mental status by medical personnel who are free to evaluate independently the patient's mental status and need for treatment protects the individual from being wrongfully detained. (Parham v. J. R. (1979) 442 U.S. 584, 607-612 [61 L.Ed.2d 101, 99 S.Ct. 2493] [review by medical personnel of parental decision to commit child satisfies due process]; U.S. v. LaFromboise, at p. 1152 [statutory requirement that hospital director act independently in the assessment of insanity acquittees is sufficient to satisfy due process]; Hickey v. Morris (9th Cir. 1983) 722 F.2d 543, 548-549 [regular examination of insanity acquittees by health professionals with discretionary judicial review unless hospital recommends release is sufficient to protect individual's interest in regular review of his or her continued confinement].)
(12) Here, the SVP Act requires at least annual reviews of an individual's mental health status and forwarding of the reviews to the committing court and the prosecuting attorney. The SVP Act also requires DMH to authorize the individual to file a petition for release if the examination reveals he or she is no longer an SVP. The individual is further protected by the right to retain, or if indigent to have the court appoint, a qualified expert to examine him or her. (§ 6605, subd. (a).) These procedures ensure that there will be periodic reviews of the individual's mental health status and dangerousness and minimize the chance the individual will remain committed merely because of idiosyncratic behavior, a major concern when an individual is civilly committed. (Jones v. United States, supra, 463 U.S. at p. 367.)
In sum, the periodic examinations by DMH, the right to an independent examination, and the petitioning procedures minimize the risk of an erroneous determination.
*1281 Johnson also contends there is a substantial risk of an erroneous determination because, under the amended SVP Act, he has the burden of filing a petition for release and making a showing that he is no longer a mentally ill and dangerous SVP.
(13) Under section 6605, when DMH has authorized a petition, only a minimal burden is imposed on the individual. The individual is required only to show "probable cause exists to believe that [a] diagnosed mental disorder has so changed that he or she is not a danger to the health and safety of others and is not likely to engage in sexually violent criminal behavior if discharged . . . ." (§ 6605, subd. (c).)[8] In these circumstances, the minimal threshold will be met and at the subsequent trial the People bear the burden of proving beyond a reasonable doubt that the individual remains a mentally ill and dangerous sexual predator. (§ 6605, subd. (d).) Under this scenario, the risk of an erroneous deprivation is small: The individual has only a minimal burden, the petition is supported by DMH and the People are required to prove the individual is an SVP beyond a reasonable doubt. If DMH does not support the petition, it will be difficult for the committed individual to make the necessary showing that he is no longer a mentally ill and dangerous SVP. That difficulty, however, is due primarily to the lack of evidence supporting changed circumstances, rather than due to the obstacles resulting from the procedures.[9] Further, placing some burden on the committed individual is not unreasonable since it places the burden on the individual with the best ability to collect and present evidence on the issues and on the person with an interest in avoiding an erroneous continuation of confinement. (Green v. Com'r of Mental Health & Retard. (2000) 2000 ME 92 [750 A.2d 1265, 1272].)[10]

State's Interest
(14) It is absolutely clear that the state has a strong interest in protecting society from persons who are dangerous to others because of a mental disease *1282 and is entitled to involuntarily commit such individuals. (Kansas v. Hendricks, supra, 521 U.S. 346, 363.) "The state has a legitimate interest under its parens patriae powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill." (Addington v. Texas, supra, 441 U.S. 418, 426.) The state also has a legitimate interest in avoiding unnecessary relitigation of issues. (See U.S. v. Wattleton, supra, 296 F.3d 1184, 1200-1201.) The findings and declarations for Proposition 83, which amended the SVP Act in 2006, indicate: "California is the only state, of the number of states that have enacted laws allowing involuntary civil commitments for persons identified as [SVP's], which does not provide for indeterminate commitments. California automatically allows for a jury trial every two years irrespective of whether there is any evidence to suggest or prove that the committed person is no longer [an SVP]. As such, this act allows California to protect the civil rights of those individuals committed as [an SVP] while at the same time protect society and the system from unnecessary or frivolous jury trial actions where there is no competent evidence to suggest a change in the committed person." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, p. 127; see also People v. Shields (2007) 155 Cal.App.4th 559, 564 [65 Cal.Rptr.3d 922] [legislative intent in amending SVP Act to provide for indefinite rather than two-year commitments was "designed to eliminate automatic SVP trials every two years when there is nothing to suggest a change in the person's SVP condition to warrant release"].) Additionally, the change from two-year to indeterminate commitments "served to reduce costs for SVP evaluations and court testimony." (Bourquez v. Superior Court, supra, 156 Cal.App.4th 1275, 1287, citing Voter Information Guide, Gen. Elec., supra, analysis of Prop. 83 by Legis. Analyst, p. 45.)

Conclusion
(15) After weighing the three Mathews factors together, we conclude that neither the imposition of an indeterminate term of commitment nor placing some burden on the individual to petition for release violates due process. The amended SVP Act contains sufficient procedural safeguards, including the periodic examinations and procedures for filing and reviewing petitions, to protect the interests of the individual while also providing for compelling state interests. Due process does not require procedures that are unnecessary or have significant administrative and fiscal burdens to the state but provide little benefit.
Our conclusion is supported by other courts that have addressed these issues. (Hickey v. Morris, supra, 722 F.2d at p. 549 [statutory scheme failing *1283 to provide for periodic, automatic judicial review for insanity acquittee does not violate due process; regular evaluations by staff physician were sufficient to protect individual's liberty interest]; U.S. v. Phelps (9th Cir. 1992) 955 F.2d 1258, 1267-1268 [statutory scheme providing that burden of proving lack of mental illness on person committed following a verdict of not guilty by reason of insanity does not violate due process]; U.S. v. Wallace (1988) 845 F.2d 1471, 1474-1475 [same]; U.S. v. Weed (10th Cir. 2004) 389 F.3d 1060, 1070 [same]; U.S. v. Wattleton, supra, 296 F.3d 1184, 1201-1202 [same]; Green v. Com'r of Mental Health & Retard., supra, 750 A.2d 1265, 1272 [same]; State v. Nording (N.D. 1992) 485 N.W.2d 781, 785-786 [same]; U.S. v. LaFromboise, supra, 836 F.2d 1149, 1152 [statutory requirement that hospital director act independently in the assessment of insanity acquittees is sufficient to satisfy due process]; Hickey v. Morris, supra, at p. 549 [statutory scheme providing for regular examination of insanity acquittees by health professionals and only discretionary judicial review when hospital does not recommend release is sufficient to protect individual's interest in regular review of his or her continued confinement].)[11]

III

Equal Protection
Johnson contends the treatment of SVP's as compared to the treatment of individuals under other civil commitment statutory schemes violates the constitutional guarantee of equal protection. He claims it is impermissible for the SVP Act to require an indeterminate commitment for SVP's while other involuntary commitment statutory schemes provide for commitments of one or two years or less. Specifically, Johnson contends SVP's are similarly situated to mentally disordered offenders who are committed for a one-year period (Pen. Code, §§ 2970, 2972, subd. (c)); persons found not guilty by reason of insanity, who are committed for two years (Pen. Code, § 1026.5, subd. (b)(8)); and persons committed under the Lanterman-Petris-Short Act (LPS Act) (Welf. & Inst. Code, § 5000 et seq.), who are committed for a maximum period of 180 days (id., § 5300 et seq.).
(16) "`"The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment."' [Citation.] `The first prerequisite to a meritorious claim under the equal protection clause is a *1284 showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but `whether they are similarly situated for purposes of the law challenged.'" (Cooley v. Superior Court (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654].) "`[N]either the Fourteenth Amendment of the Constitution of the United States nor the California Constitution [citations] precludes classification by the Legislature or requires uniform operation of the law with respect to persons who are different.'" (People v. Guzman (2005) 35 Cal.4th 577, 591 [25 Cal.Rptr.3d 761, 107 P.3d 860].) (17) A strict scrutiny standard is used to measure claims of disparate treatment in civil commitments. (People v. Green (2000) 79 Cal.App.4th 921, 924 [94 Cal.Rptr.2d 355].)
(18) By definition SVP's represent a very small number of dangerous people that have committed certain specified crimes and suffer a certain type of mental illness. As our Supreme Court stated in Cooley v. Superior Court, supra, 29 Cal.4th. 228, 253, the SVP Act "narrowly targets `a small but extremely dangerous group of [SVP']s . . . .'" In contrast, the other classifications involve a broad range of conduct and mental illness. Persons who are involuntarily committed under the LPS Act include persons who have not committed any crime. (§ 5300.5, subd. (b).) No specific crime is necessary for the involuntary commitment of an individual who is found not guilty by reason of insanity. (Pen. Code, § 1026.) Nor is either classification required to have a mental illness that predisposes them to commit particular crimes in the future. Both these classifications may include persons who have mental illnesses that are of short duration and not likely to reoccur. Individuals committed as mentally disordered offenders are required to have committed an enumerated criminal act but it is not required that the individual have a mental illness that caused him to commit the crime; the mental illness may have been only an aggravating factor in the commission of the crime. (Pen. Code, § 2962, subds. (b), (e).)[12] Further, individuals who are committed as mentally disordered offenders may have a mental illness that can be readily *1285 treated with medication. In that case, the risk to the community is minimized so long as the individual is willing to take his or her medication or has a support system willing to monitor him or her to ensure the medication is taken.
(19) In contrast to these other classifications, an SVP is a person who has committed specific types of crimes and has a mental disorder "that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).) An SVP, because of his or her mental illness, "presents a substantial danger, that is, a serious and well-founded risk, that he or she will commit such crimes if free in the community." (People v. Superior Court (Ghilotti) (2002) 27 Cal.4th 888, 922 [119 Cal.Rptr.2d 1, 44 P.3d 949]; see also People v. Roberge (2003) 29 Cal.4th 979, 988-989 [129 Cal.Rptr.2d 861, 62 P.3d 97].) The danger to the community is particularly high with SVP's. As the findings and declarations for Proposition 83 note: "`Sex offenders have very high recidivism rates. According to a 1998 report by the U.S. Department of Justice, sex offenders are the least likely to be cured and the most likely to reoffend, and they prey on the most innocent members of our society. More than two-thirds of the victims of rape and sexual assault are under the age of 18. Sex offenders have a dramatically higher recidivism rate for their crimes than any other type of violent felon.'" (Historical and Statutory Notes, 47A West's Ann. Pen. Code (2008 supp.) foll. § 209, p. 462; see Voter Information Guide, Gen. Elec., supra, text of Prop. 83, p. 172; but see Lester, Off to Elba! The Legitimacy of Sex Offender Residence and Employment Restrictions (2007) 40 Akron L.Rev. 339, 349-350, fn. omitted [suggesting that SVP's do not have a higher rate of recidivism].) The Wisconsin Supreme Court, in rejecting an equal protection challenge similar to the one Johnson makes here, observed: "The legislature has determined that as a class, persons predisposed to sexual violence are more likely to pose a higher level of danger to the community than do other classes of mentally ill or mentally disabled persons. This heightened level of dangerousness and the unique treatment needs of sexually violent persons justify distinct legislative approaches to further the compelling governmental purpose of protection of the public." (State v. Post (1995) 197 Wis.2d 279 [541 N.W.2d 115, 130].)
(20) Additionally, an SVP Act commitment requires a finding that the individual committed a predatory sexually violent offense. (People v. Hurtado (2002) 28 Cal.4th 1179, 1182, 1186-1187 [124 Cal.Rptr.2d 186, 52 P.3d *1286 116].)[13] Predatory offenses are directed "toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization." (§ 6600, subd. (e); see People v. Hurtado, supra, 28 Cal.4th at p. 1182.) In Hurtado, the court stated "Because predatory offenders could strike at any time and victimize anyone, they pose a much greater threat to the public at large. In contrast, a defendant likely to commit crimes only against family members or close acquaintances is less likely to reoffend because potential victims will be aware of the defendant's status as a sex offender. The public at large, however, is inevitably more defenseless against acts committed by strangers." (People v. Hurtado, supra, at pp. 1187-1188.) The particular danger to the public at large posed by SVP's distinguishes them from the other groups.
The treatment and prognosis for SVP's differs from the other classifications. As we noted above, the other classifications may include individuals who have mental illnesses that can readily be treated or may be of a short duration. SVP's, however, have a mental illness that generally requires long-term treatment and only a limited likelihood of cure. The findings and declarations for Proposition 83, which amended the SVP Act, specifically recognize that "sex offenders are the least likely to be cured . . . ." (Voter Information Guide, Gen. Elec., supra, text of Prop. 83, p. 127.) The Florida Supreme Court has observed, "the `treatment needs of this population are very long term' and necessitate very different treatment modalities from those appropriate for persons committed under [another Florida involuntarily commitment scheme]." (Westerheide v. State (Fla. 2002) 831 So.2d 93, 112; see Iowa Code, § 229A.1 [same]; Kan. Stat. Ann., § 59-29a01 [statement of legislative intent stating the necessity for separate commitment scheme for SVP's to provide for potentially long-term control, care and treatment]; N.J. Stat. Ann., § 30:4-27.25 [statement of legislative intent recognizing need for separate involuntary commitment process for SVP's due to the nature of their mental illness and danger they present]; S.C. Code Ann., § 44-48-20 [same]; Tex. Health & Safety Code Ann., § 841.001 [same].)
(21) In sum, individuals who are found to be SVP's under the SVP Act are not similarly situated to individuals committed under the LPS Act, mentally disordered offenders or persons found not guilty by reason of insanity and therefore do not have to be treated the same as these other classifications.

*1287 IV

Ex Post Facto and Former Jeopardy
(22) The constitutional principles prohibiting ex post facto laws and placing a person twice in jeopardy apply only to criminal proceedings. (Seling v. Young (2001) 531 U.S. 250, 267 [148 L.Ed.2d 734, 121 S.Ct. 727]; Kansas v. Hendricks, supra, 521 U.S. 346, 361; People v. Castellanos (1999) 21 Cal.4th 785, 790-795 [88 Cal.Rptr.2d 346, 982 P.2d 211]; Hydrick v. Hunter (2007) 500 F.3d 978, 993.) As Johnson acknowledges, the California Supreme Court has held the SVP Act is civil in nature and therefore these principles do not apply. (Hubbart, supra, 19 Cal.4th 1138, 1179.) He argues the 2006 amendments to the SVP Act changed the nature of the SVP Act and it no longer qualifies as a civil commitment scheme.
In part, Johnson relies on other statutory changes that were made by Proposition 83. He argues: "Proposition 83 significantly increased the penalties for sex offenses and limited the availability of conduct credits for many sex offenders. In addition, the law restricted the availability of probation for some sex offenders. Taken as a whole, the primary purpose of the law was to increase criminal penalties for sex offenders. Viewed in that context, the imposition of an indeterminate term for [SVP's] was not an action taken with the intent to create or alter the existing civil commitment scheme but was, instead, one more way the authors of the initiative could increase the penalties for sex offenders."
While it is clear that many of the provisions in Proposition 83 involved criminal penalties, it does not necessarily follow that the changes in the SVP Act were also intended to be punitive. The findings and declarations for Proposition 83 include statements specifically addressing the changes in the SVP Act. These findings and declarations indicate the voters' intent was to align California with the majority of other states that provided for an indeterminate commitment and to avoid "unnecessary or frivolous jury trial actions where there is no competent evidence to suggest a change in the committed person." (Voter Information Guide, Gen. Elec., supra, text of Prop. 83, p. 127.) Thus, the intent behind the amendments was to reduce unnecessary administrative and fiscal burdens rather than to impose additional punishment.
Johnson also supports his argument by focusing on language in Hubbart, supra, 19 Cal.4th at page 1177. In Hubbart, the Supreme Court rejected an ex post facto argument based on a claim that it was too difficult to obtain conditional release under section 6608 and that confinement could endure longer than permitted by the United States Supreme Court in Kansas v. Hendricks, supra, 521 U.S. 346. The Hubbart court explained:
*1288 (23) "[N]othing in Hendricks purports to limit for ex post facto purposes the precise length of time during which dangerously disordered persons may be confined, or the particular procedural circumstances under which they may be released. In rejecting Hendricks's claim that the scheme imposed punishment because confinement was `potentially indefinite,' the court made clear that the critical factor is whether the duration of confinement is `linked to the stated purposes of the commitment, namely, to hold the person until his mental abnormality no longer causes him to be a threat to others.' ([Kansas v. Hendricks, supra,] 521 U.S. at p. 363 [117 S.Ct. at p. 2083].)
"This principle was satisfied in Hendricks because incapacitation beyond the initial commitment period required a new judicial hearing at which the state was required to prove that the sexual predator remained dangerous and mentally impaired. And, while Kansas did not offer any alternatives to confinement in a secure facility during the term of commitment (such as conditional release), the committed person was apparently entitled to unconditional release whenever it became clear in proceedings initiated by either the custodial agency or the person that he was safe to be at large." (Hubbart, supra, 19 Cal.4th at p. 1176.)
The California Supreme Court in Hubbart then stated:
"Viewed as a whole, the SVP [Act] is also designed to ensure that the committed person does not `remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness.' (Hendricks, supra, 521 U.S. 346, 364 [117 S.Ct. 2072, 2083].) In general, each period of commitment is strictly limited and cannot be extended unless the state files a new petition and again proves, beyond a reasonable doubt, that the person is dangerous and mentally impaired. (§ 6604.) Although committed for two years, the SVP is entitled each year to a new mental examination and to judicial review of the commitment to determine whether his condition has changed such that he no longer poses a danger to the health and safety of others. (§ 6605, subds. (a)-(c).) Assuming there is probable cause to support such a determination and a full-blown hearing ensues, the burden rests on the state to prove, beyond a reasonable doubt, that the SVP remains mentally disordered and dangerous. (Id., subd. (d).) The SVP is entitled to unconditional release and discharge if he prevails in this proceeding. (Id., subd. (e).) Also, the superior court may order that the SVP be unconditionally released and discharged at any time [DMH] makes such a request and it is clear the conditions underlying commitment no longer exist. (Id., subd. (f).)
"As we have explained, these procedures are supplemented by opportunities for conditional release not made available under the statutory scheme *1289 upheld in Hendricks, supra, 521 U.S. 346. (§§ 6607 [report and recommendation for conditional release by Director of Mental Health], 6608 [petition for conditional release by SVP without director's recommendation].) Relief under either statute is appropriate where the court determines that the SVP is not likely to commit sexually violent criminal behavior while under supervision and treatment in the community. In light of the foregoing provisions, Hubbart has not established that the SVP [Act] imposes `punishment' by continuing the confinement of persons who are no longer dangerously disturbed." (Hubbart, supra, 19 Cal.4th at p. 1177.)
Johnson argues that since the requirement for a new petition every two years no longer exists, we should conclude that the current version of the SVP Act is punitive and violates the prohibition on ex post facto laws. Johnson, however, ignores that the Hubbart court also relied on other SVP Act procedures, that provide opportunities for release, procedures that still exist in the amended version of the SVP Act and, indeed, are enhanced. For example, Proposition 83 amended section 6605 to specify the contents of the annual evaluation by DMH and require it to be forwarded to the committing court and prosecuting attorney. (Voter Information Guide, Gen. Elec., supra, text of Prop. 83, p. 137.)
Finally, Johnson ignores the critical question in determining whether a commitment is civil in nature, that is, "whether the duration of confinement is `linked to the stated purposes of the commitment, namely, to hold the person until his mental abnormality no longer causes him to be a threat to others.'" (Hubbart, supra, 19 Cal.4th at p. 1176, quoting Kansas v. Hendricks, supra, 521 U.S. at p. 363.) As we explained in part II, the changes in the SVP Act do not result in increasing the potential length of the commitment longer than necessary to treat the individual's mental illness. Even before the SVP Act was amended to provide for an indeterminate commitment, a commitment was potentially indeterminate as a result of the serial filing of petitions every two years. The procedures in the amended SVP Act are designed to ensure that an individual who is involuntarily committed under the SVP Act is a mentally ill and dangerous SVP and that the individual will be released if he or she is no longer mentally ill. Nothing in the amendments authorizes or condones the involuntary commitment of individuals who are no longer mentally ill.
(24) We conclude the current version of the SVP Act is not punitive in nature and therefore the principles of former jeopardy and ex post facto do not apply.

*1290 DISPOSITION
The order is affirmed.
Huffman, J., and McIntyre, J., concurred.
NOTES
[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] An SVP is a person who has committed violent sexual offenses against multiple victims and is likely to engage in sexually violent criminal behavior in the future because of a diagnosed mental disorder. (§ 6600, subd. (a)(1).)
[3] Section 6601, subdivision (b) states that after an initial screening by the Department and the Board, if it is determined the individual is to be a likely SVP, then the Department "shall refer the person to [DMH] for a full evaluation of whether the person meets the criteria in Section 6600." (Italics added.)
[4] The petition in this case was originally filed in December 2005 and sought a two-year commitment. In October 2006, the district attorney filed an amended petition seeking an indeterminate commitment.
[5] The parties submitted supplemental briefing on the ripeness of the constitutional issues. Although these issues technically may not be ripe until Johnson has been involuntarily committed for two years (People v. Carroll (2007) 158 Cal.App.4th 503, 508, fn. 2 [69 Cal.Rptr.3d 816] [challenges to amended SVP Act not yet ripe]), the issue of interpreting the amended SVP Act is sufficiently definite and concrete to permit a useful, rather than merely advisory, opinion. (Action Apartment Assn. v. Santa Monica Rent Control Bd. (2001) 94 Cal.App.4th 587, 609 [114 Cal.Rptr.2d 412].) The ripeness doctrine does not prevent a court from resolving concrete disputes if the result of delaying a decision will be a lingering uncertainty in the law where there is widespread public interest in the answer to a specific legal question. (Pacific Legal Foundation v. California Coastal Com. (1982) 33 Cal.3d 158, 170 [188 Cal.Rptr. 104, 655 P.2d 306].)
[6] Some courts have noted that the deprivation is ameliorated by the fact the individual receives treatment and care (see U.S. v. Wattleton (11th Cir. 2002) 296 F.3d 1184, 1201), but this observation was made in the context of an individual who was committed as a result of being found not guilty by reason of insanity and was committed to a hospital for treatment rather than being sent to prison.
[7] Johnson relies on Foucha v. Louisiana (1992) 504 U.S. 71 [118 L.Ed.2d 437, 112 S.Ct. 1780] for the proposition the state must periodically prove by clear and convincing evidence that an involuntarily committed individual is mentally ill and dangerous. This reliance is misplaced. The Foucha decision was limited to holding that dangerousness alone does not justify the continuing involuntary commitment of an individual who is no longer mentally ill. Foucha did not address the issues raised in this case.
[8] Johnson complains: "[I]t appears that at [the probable cause] hearing, he is not even allowed to call witnesses on his behalf. Instead, the hearing is based purely upon the documents produced by the defendant, DMH, and the prosecuting attorney." Johnson does not further argue this point or cite any authority to support a conclusion that such a procedure violates due process. Nor do we see a due process violation occurring in this procedure, which involves a preliminary hearing to determine whether a full-blown trial is necessary.
[9] We note that it is not unreasonable for the state to rely on the findings of DMH that an individual's mental status remains unchanged. Section 6605, subdivision (a) does give the individual the right to an independent examination. An evaluation by an independent expert provides evidentiary support for a petition brought without the concurrence of DMH.
[10] The court in Green v. Com'r of Mental Health & Retard., supra, 750 A.2d 1265, 1272, also noted the individual had an interest "in avoiding an erroneous release that may lead to personal harm and harm to others."
[11] These cases address postcommitment hearings involving insanity acquittees, rather than SVP's, a difference we regard as insignificant, particularly since insanity acquittees encompass a broader array of individuals, including those who are less dangerous and more amenable to treatment and therefore, arguably, would require more frequent judicial review than SVP's.
[12] The mental disorder necessary for commitment as a mentally disordered offender is "an illness or disease or condition that substantially impairs the person's thought, perception of reality, emotional process, or judgment; or which grossly impairs behavior; or that demonstrates evidence of an acute brain syndrome for which prompt remission, in the absence of treatment, is unlikely." (Pen. Code, § 2962, subd. (a).) The term "does not include a personality or adjustment disorder, epilepsy, mental retardation or other developmental disabilities, or addiction to or abuse of intoxicating substances." (Id., subd. (e).) The individual must have received a determinate term for one of the enumerated crimes: voluntary manslaughter; mayhem; kidnapping in violation of Penal Code section 207; robbery using a deadly or dangerous weapon; carjacking if the individual used a deadly or dangerous weapon; forcible rape or rape involving a threat of future retaliation; forcible sodomy; forcible oral copulation; lewd acts on a child under the age of 14 years; continuous sexual abuse of a child; forcible penetration with a foreign object; arson that posed a substantial danger of physical harm to others; any felony where the individual used a firearm and the firearm enhancement was pled and proven; explosion of a destructive device with the intent to commit murder; attempted murder; an offense involving the use of force or violence or which caused serious bodily injury; and an offense where the individual threatened the use of force or violence likely to produce substantial physical harm such that a reasonable person should believe and expect the force to be used. (Pen. Code, § 2962, subd. (e).)
[13] Prior to the 2006 amendment to section 6600, subdivision (a)(1), the SVP Act, unlike the mentally disordered offenders or persons not guilty by reason of insanity statutes, also required that the offender have committed a qualifying offense against at least two victims. Currently, section 6600, subdivision (a)(1) merely requires a qualifying offense against one victim. (See Historical and Statutory Notes, 73D West's Ann. Welf. & Inst. Code (2008 supp.) foll. § 6600, p. 79.)