164 Cal.App.4th 348 (2008)
THE PEOPLE, Plaintiff and Respondent,
v.
CORNELIOUS JOSEPH BOYLE, Defendant and Appellant.
No. A117860.
Court of Appeals of California, First District, Division Four.
June 26, 2008.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*357 Rudy Kraft for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin and Sara Turner, Deputy Attorneys General, for Plaintiff and Respondent.

*358 OPINION
REARDON, Acting P. J.
The trial court found that appellant Cornelious Joseph Boyle was a sexually violent predator and ordered him to be committed indefinitely to Atascadero State Hospital. He appeals, raising due process, ex post facto, double jeopardy and equal protection challenges to his commitment pursuant to an amended version of the Sexually Violent Predator Act (SVPA). (See Welf. & Inst. Code, §§ 6600-6609.3.)[1] Boyle also argues that the underlying petition should have been dismissed for material legal error; that his counsel was ineffective at his court trial; and that there was insufficient evidence of qualifying offenses to support his commitment. We affirm the order of commitment.

I. FACTS
In April 1993, appellant Cornelious Joseph Boyle befriended a seven-year-old boy in Virginia, "talk[ed] dirty" to him, and touched the child's private parts. He was arrested and charged with aggravated sexual battery. (See Va. Code, § 18.2-67.3.) Boyle pled guilty to this offense and was sentenced to a Virginia penitentiary.
In July 2004, a woman reported to Virginia authorities that Boyle had kissed her 10-year-old daughter and fondled the girl's breast. Soon after the incident, Boyle disappeared. In October 2004, he was found living in California and was arrested on a Virginia warrant.
Boyle was charged with failure to register as a sex offender and possession of child pornography. (See Pen. Code, §§ 667, subds. (b)-(i), 1170.12; Pen. Code, former §§ 290, subd. (g)(2), as amended by Stats. 2003, ch. 634, § 1.3, 311.11, subd. (a), as amended by Stats. 2001, ch. 559, § 1, 667.5, subd. (b), as amended by Stats. 2002, ch. 606, § 2.) In November 2004, he pled guilty to failing to register and admitted a prior felony conviction for enhancement purposes. He was sentenced to prison for four years. (See Pen. Code, former §§ 290, subd. (g)(2), 667.5, subd. (b).) In 2005, Boyle pled guilty to a Virginia aggravated sexual battery charge stemming from the July 2004 incident. He received a prison sentence for this conviction from the Virginia court.
In the fall of 2006, Boyle was scheduled to be released from state prison in California. During the summer and early fall, four clinical psychologists evaluated him to determine whether he met the statutory definition of a sexually violent predator. One concluded that he did not, but the other three *359 found that he did. The State Department of Mental Health (DMH) recommended that Boyle be committed as a sexually violent predator. Accordingly, in October 2006, a petition was filed seeking Boyle's civil commitment pursuant to the SVPA. (See §§ 6250, 6600-6609.3.) The petition alleged that he had been convicted of aggravated sexual batteries in Virginia stemming from the 1993 and 2004 incidents. In February 2007, the trial court found that there was probable cause to believe that Boyle was a sexually violent predator. (See § 6602.) After he waived his right to a jury trial on the petition, the court found in April 2007 that he was a sexually violent predator and ordered him committed to Atascadero State Hospital.

II. CONSTITUTIONAL CHALLENGES

A. Statutory Background

On appeal, Boyle raises several constitutional challenges to an amended version of the SVPA. He contends that the amended SVPA runs afoul of his federal and state constitutional rights to due process and equal protection of the laws, as well as violating constitutional bans on double jeopardy and ex post facto laws.[2] He seeks immediate release, reasoning that because the statutory authority underlying the commitment order does not meet constitutional muster, his commitment was invalid. In order to understand Boyle's claims of error on appeal, we set out an overview of the SVPA as originally enacted and as now in effect.
The original version of the SVPA took effect in 1996. (See Stats. 1995, ch. 763, p. 5921.) At that time, the SVPA provided for a two-year civil commitment of any person who was tried and found beyond a reasonable doubt to be a sexually violent predator. (People v. Williams (2003) 31 Cal.4th 757, 764 [3 Cal.Rptr.3d 684, 74 P.3d 779], cert. den. sub nom. Williams v. California (2004) 540 U.S. 1189, 124 S.Ct. 1431, 158 L.Ed.2d 98; Hubbart I, supra, 19 Cal.4th at pp. 1143, 1147; see former §§ 6603, subd. (d), 6604 [Stats. 1995, ch. 763, § 3, pp. 5922, 5925-5926].) When the two-year term of commitment expired, it could be extended if a new jury trial was conducted at which the People again proved beyond a reasonable doubt that the committed person remained a sexually violent predator. (Former §§ 6604, 6604.1, 6605, subds. (d), (e); Cooley v. Superior Court (2002) 29 Cal.4th 228, 243, fn. 5 [127 Cal.Rptr.2d 177, 57 P.3d 654]; People v. Roberge (2003) 29 *360 Cal.4th 979, 984 [129 Cal.Rptr.2d 861, 62 P.3d 97]; People v. McKee (2008) 160 Cal.App.4th 1517, 1525-1526 [73 Cal.Rptr.3d 661], petn. for review pending, petn. filed Apr. 22, 2008, S162823 (McKee); People v. Shields (2007) 155 Cal.App.4th 559, 562 [65 Cal.Rptr.3d 922]; People v. Munoz (2005) 129 Cal.App.4th 421, 429-430 [28 Cal.Rptr.3d 295].) In practice, the procedures applicable to extension proceedings under the original SVPA resulted in a new determination of sexually violent predator status every two years. (See People v. Whaley (2008) 160 Cal.App.4th 779, 785-786 [73 Cal.Rptr.3d 133]; People v. Munoz, supra, 129 Cal.App.4th at pp. 429-430.)
The original SVPA was designed to ensure that a committed person did not remain confined any longer than he or she suffered from a mental abnormality rendering him or her unable to control his or her dangerousness. (Hubbart I, supra, 19 Cal.4th at p. 1177.) The committed person was entitled to petition for conditional release to a community treatment program and the state was required to conduct an annual review of a committed person's mental status that could lead to unconditional release. (People v. Cheek (2001) 25 Cal.4th 894, 898 [108 Cal.Rptr.2d 181, 24 P.3d 1204]; McKee, supra, 160 Cal.App.4th at pp. 1526-1527; see former §§ 6605, 6608.) In 1999, the California Supreme Court upheld the original SVPA against various constitutional challenges, relying on the reasoning of a United States Supreme Court decision upholding a similar Kansas law against federal constitutional attack. (Hubbart I, supra, 19 Cal.4th at pp. 1151-1179; see Kansas v. Hendricks (1997) 521 U.S. 346, 350, 356-371 [138 L.Ed.2d 501, 117 S.Ct. 2072] (Hendricks).)
(1) Since then, the SVPA has been amended several times, most recently in November 2006. Shortly after Boyle's civil commitment petition was filed, California voters amended the SVPA when they approved Proposition 83. (People v. Whaley, supra, 160 Cal.App.4th at p. 787; see Cal. Const., art. II, § 10, subd. (a).) This amended version of the SVPA specifies an indeterminate term of civil commitment, rather than the two-year term set out in the original law. (See §§ 6604, 6604.1; McKee, supra, 160 Cal.App.4th at p. 1527; People v. Shields, supra, 155 Cal.App.4th at pp. 562-563.) Proposition 83 did not change the requirement that sexually violent predator status at an initial commitment proceeding had to be proven by the state beyond a reasonable doubt. (§ 6604.) The amended SVPA continues to require annual evaluations of whether or not a committed person remains a sexually violent predator. (§ 6605, subd. (a); McKee, supra, 160 Cal.App.4th at p. 1527.) However, the amended SVPA now provides that a committed person will remain in custody until he or she successfully meets the burden of proving that he or she is no longer a sexually violent predator or until the DMH determines he or she no longer meets the definition of a sexually violent *361 predator. (§§ 6604, 6608; McKee, supra, 160 Cal.App.4th at p. 1530; Bourquez v. Superior Court (2007) 156 Cal.App.4th 1275, 1287 [68 Cal.Rptr.3d 142].)
(2) Under the amended SVPA, the DMH's annual examination of the committed person's mental condition may trigger different effects, depending on the result of that examination. (See § 6605, subd. (a).) The DMH must file an annual report with the committing court indicating whether the committed person currently meets the definition of a sexually violent predator and whether either conditional release to a less restrictive alternative or an unconditional release is in the best interest of that person. In the event of a conditional release, the DMH must also indicate what conditions could be imposed that would adequately protect the community. (Ibid.; McKee, supra, 160 Cal.App.4th at pp. 1527-1529.)
(3) If the DMH determines that the committed person is no longer a sexually violent predator or recommends release, that person is authorized to petition the committing court for release. (§ 6605, subd. (b); McKee, supra, 160 Cal.App.4th at p. 1528.) If the trial court finds that there is probable cause to believe the person's mental disorder has so changed that he or she is no longer a danger to the health and safety of others and is no longer likely to engage in sexually violent criminal behavior if discharged, then the court conducts a trial on the petition. (§ 6605, subd. (c); McKee, supra, 160 Cal.App.4th at p. 1528.) At the trial pursuant to a DMH-authorized petition, the state must carry the burden of proving beyond a reasonable doubt that the committed person's diagnosed mental disorder remains such that he or she is a danger to the health and safety of others and is likely to engage in sexually violent criminal behavior if discharged. (§ 6605, subd. (d); McKee, supra, 160 Cal.App.4th at p. 1528.) If the trier of fact finds in the committed person's favor at this trial, the person must be unconditionally released and discharged. (§ 6605, subd. (e); People v. Cheek, supra, 25 Cal.4th at p. 902; McKee, supra, 160 Cal.App.4th at pp. 1528-1529 & fn. 7.) If the trial court concurs with the DMH's view that a conditional release would be warranted, it may order the committed person to be released into a conditional release program. (See §§ 6605, subd. (b), 6608.)
(4) Even if the DMH does not authorize a petition, the committed person may still file an unauthorized petition for conditional or unconditional release with the court, but different procedures apply. In these circumstances, the trial court summarily denies the petition if it is frivolous or fails to allege sufficient facts to warrant a full hearing on it. (§ 6608, subd. (a).) At all hearings on the petition, the committed person has the burden of proof to show that he or she is no longer a sexually violent predator based on a preponderance of evidence. The state does not have to meet the burden of *362 proof beyond a reasonable doubt as is required at an initial commitment hearing or at hearings on an authorized petition. (Id., subd. (i); see §§ 6604, 6605, subd. (d).) When adjudicating an unauthorized petition, if the trial court finds that the committed person would not be a danger to others due to a diagnosed mental disorder if under supervision and treatment in the community, the court will order a one-year conditional release to an outpatient treatment program. After one year, the trial court conducts a second hearing to determine if the committed person's unconditional release is warranted.[3] (§ 6608, subd. (d).) If the trial court denies an unauthorized petition, the committed person may not file a new petition for one year. (Id., subd. (h); see McKee, supra, 160 Cal.App.4th at p. 1529.)
(5) The amended SVPA[4] was in effect in April 2007, when Boyle was committed as a sexually violent predator. Thus, he was ordered to be committed for an indefinite term of treatment and confinement with the DMH according to the terms of the amended SVPA. (See §§ 6604, 6604.1.) This was proper. The date of adjudication of sexually violent predator statusnot the filing date of the underlying petitionis the event determining whether any retroactive application of the law has been made. (People v. Carroll (2007) 158 Cal.App.4th 503, 514 [69 Cal.Rptr.3d 816]; see People v. Shields, supra, 155 Cal.App.4th at p. 563 [interim SVPA].) Amendments to the SVPA apply prospectively to all proceedings pending at the time that those amendments became effective. (See, e.g., People v. Whaley, supra, 160 Cal.App.4th at pp. 792-796; Bourquez v. Superior Court, supra, 156 Cal.App.4th at pp. 1288-1289.) As the trial court's April 2007 finding of sexually violent predator status was the critical event in Boyle's case, the current version of the SVPAincluding those amendments that became effective in November 2006 with the passage of Proposition 83applies to this matter.
In this appeal, Boyle raises constitutional challenges to the amended version of the SVPA, arguing that it differs so significantly from the original SVPA that the California Supreme Court upheld in 1999 that it now fails to pass constitutional muster. (See Hubbart I, supra, 19 Cal.4th at pp. 1151-1179.) With the key differences between the original and amended SVPA in mind, we address each constitutional challenge to the amended SVPA in turn.

*363 B. Due Process

First, Boyle raises a federal constitutional due process claim, challenging the state's right to commit him for an indefinite term. He argues that the amended SVPA violates due process because it makes it too difficult for a committed person to obtain release from indefinite commitment. He complains that the amended SVPA improperly shifts the burden of proof from the state to him to prove that he no longer qualifies as a sexually violent predator in cases not involving DMH-authorized petitions. (See U.S. Const., 14th Amend.)
(6) A civil commitment constitutes a significant deprivation of one's libertythe fundamental freedom from bodily restraintthat requires due process protection. (Foucha v. Louisiana (1992) 504 U.S. 71, 79-80 [118 L.Ed.2d 437, 112 S.Ct. 1780] (Foucha); Addington v. Texas (1979) 441 U.S. 418, 425 [60 L.Ed.2d 323, 99 S.Ct. 1804] (Addington); see Jones v. United States (1983) 463 U.S. 354, 361 [77 L.Ed.2d 694, 103 S.Ct. 3043] (Jones); McKee, supra, 160 Cal.App.4th at p. 1530.) The state must have a constitutionally adequate purpose for civil confinementa reason that bears some reasonable relationship to the purpose for which the person is being committed. (Foucha, supra, 504 U.S. at p. 79; Jones, supra, 463 U.S. at p. 368; O'Connor v. Donaldson (1975) 422 U.S. 563, 574 [45 L.Ed.2d 396, 95 S.Ct. 2486].) An individual's right to be free of physical restraint may be overridden for the common good when the individual is unable to control his or her behavior and, as a result, poses a danger to public health and safety. (Hendricks, supra, 521 U.S. at pp. 356-357; Foucha, supra, 504 U.S. at p. 80; Hubbart I, supra, 19 Cal.4th at p. 1151; McKee, supra, 160 Cal.App.4th at p. 1530.)
In order to make an initial civil commitment of a person to a mental institution, due process requires that the state prove by clear and convincing evidence both that the person is mentally ill and that hospitalization is required for his or her own welfare or for the protection of others.[5] (Hendricks, supra, 521 U.S. at p. 358; Foucha, supra, 504 U.S. at pp. 75-76; Addington, supra, 441 U.S. at pp. 426-427, 432-433.) Even so, the United States Supreme Court has acknowledged that due process is flexible and calls for different procedural protections in different situations. (Jones, supra, 463 U.S. at pp. 367-368; Morrissey v. Brewer (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 92 S.Ct. 2593].) Thus, when a criminal defendant has been found to have committed a crime beyond a reasonable doubt but is held not guilty by reason of insanity, the state may commit him or her without a separate proceeding to establish mental illness and dangerousness. The verdict of not *364 guilty by reason of insanity adequately establishes these elements to support commitment, even if the defendant proves mental illness by only a preponderance of evidence. (Foucha, supra, 504 U.S. at p. 76; Jones, supra, 463 U.S. at pp. 363-368.)
Once the person has been committed, due process permits the person to be held as long as he or she is both mentally ill and dangerous, but no longer. Once the person recovers his or her sanity or is no longer dangerous, due process requires that he or she be released from civil commitment. (Foucha, supra, 504 U.S. at pp. 77-78 [state cannot hold dangerous person who is no longer mentally ill]; Jones, supra, 463 U.S. at pp. 368, 370; see O'Connor v. Donaldson, supra, 422 U.S. at p. 575 [state may not confine harmless mentally ill person].) A civilly committed person must have constitutionally adequate procedures to establish the grounds for confinement in order to satisfy due process requirements. (Foucha, supra, 504 U.S. at p. 79.)
(7) In this appeal, the parties dispute whether the procedures set out in the amended SVPA satisfy federal constitutional due process requirements. (See Jones, supra, 463 U.S. at p. 363, fn. 11 [constitutionality of release provisions not at issue in that case].) As to the basic contention that an indefinite commitment is necessarily unconstitutional, the United States Supreme Court has expressed no constitutional concerns. (See Jones, supra, 463 U.S. at p. 368; see also Addington, supra, 441 U.S. at pp. 420, 425 [indefinite commitment]; McKee, supra, 160 Cal.App.4th at p. 1542.) If an indefinite term of civil commitment is subject to adequate opportunities to determine the current status of a committed person, ensuring that one who no longer qualifies for commitment can obtain release, then the federal constitutional right to due process does not prohibit that indefinite involuntary commitment. (Foucha, supra, 504 U.S. at p. 77; People v. Allen (2007) 42 Cal.4th 91, 103-104 [64 Cal.Rptr.3d 124, 164 P.3d 557] [mentally disordered offenders]; McKee, supra, 160 Cal.App.4th at p. 1542.) For example, in a case involving a civil commitment after a finding of not guilty by reason of insanity, the United States Supreme Court held that due process permitted the state to confine the person to a mental institution until such time as he or she has regained his or her sanity or is no longer a danger to himself or herself or the general public. (Jones, supra, 463 U.S. at p. 370; McKee, supra, 160 Cal.App.4th at p. 1538.) That court specifically authorized the legislature to make the length of such a commitment indefinite subject to periodic review of suitability for release, noting that it is impossible to predict when or if a mentally ill person will recover. (Jones, supra, 463 U.S. at p. 368.)
(8) The Jones reasoning supports our conclusion that a sexually violent predator's initial indefinite civil commitment pursuant to California's amended SVPA does not violate federal constitutional due process. Both the *365 statute that was at issue in Jones and the amended SVPA provide for indefinite civil commitment of persons who are found to be dangerous to others because of mental illness. (See Jones, supra, 463 U.S. at pp. 356-358, 368; McKee, supra, 160 Cal.App.4th at p. 1538.) As in Jones, appropriate findings of dangerousness and mental illness were made to support an initial commitment under the amended SVPA. In finding that Boyle was a sexually violent predator within the meaning of the amended SVPA, the trial court necessarily found by proof beyond a reasonable doubt that Boyle had been convicted of committing a sexually violent offense; that he suffered from a diagnosed mental disorder; and, that as a result of that disorder, he was a danger to the health and safety of others because it was likely that he would engage in sexually violent predatory criminal behavior. Therefore, the trial courtsitting as the trier of fact at Boyle's requesteffectively found that he was both dangerous and mentally ill. In fact, the finding that he had a diagnosed mental disorder was made by proof beyond a reasonable doubt, a standard of proof greater than the proof by a preponderance of evidence required for the insanity defense in Jones. That higher standard of proof afforded Boyle with more due process protection at the initial commitment stage than was provided to the insanity acquittee in Jones. Accordingly, we are satisfied that his initial civil commitment for an indefinite term satisfied the general due process requirements set forth in Jones. (See, e.g., McKee, supra, 160 Cal.App.4th at pp. 1538-1539.)
Boyle also challenges the constitutionality of release hearing procedures. He contends that the annual examinations and the opportunity to file annual petitions for release specified in the amended SVPA are inadequate to protect his due process rights after his initial commitment. Specifically, he complains that at any release hearings after a non-DMH-authorized petition, he must bear the burden to prove his right to release by a preponderance of the evidence. He argues that federal due process requires that he be entitled to release if the state could not show by clear and convincing evidence that he remained a sexually violent predator.
We disagree. The burden of proof by a preponderance of evidence requirement that Boyle finds inadequate is the same as the burden of proof placed on the insanity acquitteea burden of proof that the United States Supreme Court appears to have implicitly approved in Jones for review hearings. (Jones, supra, 463 U.S. at pp. 357, 366-368; see McKee, supra, 160 Cal.App.4th at p. 1541; see also § 6608, subd. (i).) As the Jones review hearing is analogous to a petition for release pursuant to section 6608 of the amended SVPA, we are satisfied that placing on Boyle the burden to prove his right to release by a preponderance of the evidence at hearings on future petitions for release that are filed without DMH authorization does not violate his federal constitutional right to due process. (See McKee, supra, 160 Cal.App.4th at p. 1541.)

*366 C. Ex Post Facto and Double Jeopardy

Boyle also reasons that the amended SVPA is a criminal statute, not a civil one, and as such violates the ex post facto and double jeopardy provisions of the federal and state Constitutions. (See U.S. Const., art. I, §§ 9, cl. 3, 10, cl. 1, 5th & 14th Amends.; Cal. Const., art. I, §§ 9, 15.) As we shall see, the resolution of these constitutional issues turns on the question of whether the amended SVPA is a punitive statute.
(9) Article I, section 10, of the United States Constitution prohibits any state from passing any ex post facto law. The ex post facto clause prohibits only those laws that retroactively alter the definition of crimes or increase punishment for criminal acts. (Collins v. Youngblood (1990) 497 U.S. 37, 43 [111 L.Ed.2d 30, 110 S.Ct. 2715]; McKee, supra, 160 Cal.App.4th at p. 1543.) Thus, to implicate federal ex post facto protection, a statute must be a penal one. (Hendricks, supra, 521 U.S. at p. 370; see California Dept. of Corrections v. Morales (1995) 514 U.S. 499, 504-505 [131 L.Ed.2d 588, 115 S.Ct. 1597].) Unless the SVPA imposes punishment, its application does not implicate ex post facto concerns. (Hendricks, supra, 521 U.S. at pp. 370-371.) If the SVPA does not apply retroactivelybut permits confinement only on a finding of current mental disorder and likelihood to pose a future danger to the publicit does not violate the ban on ex post facto laws. (See Hendricks, supra, 521 U.S. at p. 371; see also People v. Whaley, supra, 160 Cal.App.4th at pp. 792-796; Bourquez v. Superior Court, supra, 156 Cal.App.4th at pp. 1288-1289.) We evaluate the amended SVPA to determine if it is punitive on its face, not as applied. (See Seling v. Young (2001) 531 U.S. 250, 260-265 [148 L.Ed.2d 734, 121 S.Ct. 727] [rejecting "`as-applied'" challenges for double jeopardy and ex post facto claims].)
The United States Supreme Court has rejected an ex post facto challenge to Kansas's sexually violent predator statute. (Hendricks, supra, 521 U.S. at pp. 362-368, 370-371; see Hubbart I, supra, 19 Cal.4th at p. 1174 [Hendricks is binding authority on ex post facto claims].) Our Supreme Court upheld the original SVPA against claims that it was a punitive statute implicating federal ex post facto concerns, based on this United States Supreme Court authority. (Hubbart I, supra, 19 Cal.4th at pp. 1170-1179; see McKee, supra, 160 Cal.App.4th at p. 1545; People v. Hubbart (2001) 88 Cal.App.4th 1202, 1209, 1226 [106 Cal.Rptr.2d 490], cert. den. sub nom. Hubbart v. California (2002) 534 U.S. 1143, 122 S.Ct. 1097, 151 L.Ed.2d 994 (Hubbart II).) In this appeal, Boyle argues that the amended version of the SVPA has become punitive, despite its stated civil purpose. He focuses on four changes in the lawthe substitution of an indefinite term of commitment for the old law's two-year term that could have been renewed after the state made a new showing of the committed person's sexually violent *367 predator status; the fact that the committed person now has the burden of proof by preponderance of evidence that he or she is no longer a sexually violent predator if seeking release or discharge without DMH authorization; the lack of a right to a jury trial on an unauthorized petition for release or discharge; and a requirement that the committed person be released for a year of outpatient treatment before warranting unconditional dischargeas evidence that the voters who enacted the amended SVPA intended not just to commit, but also to punish, sexually violent predators.
(10) Preliminarily, we disagree with Boyle's claim that when a committed person seeks unconditional release without the authorization of the DMH, he must spend a year in an outpatient treatment program before he may gain his unconditional release. It is true that the original SVPA allowed a committed person to petition only for "conditional release and subsequent unconditional discharge." (Former § 6608, subd. (a) [Stats. 1995, ch. 763, § 3, pp. 5922, 5928], italics added; see People v. Cheek, supra, 25 Cal.4th at p. 902.) However, the amended SVPA now permits a committed person to petition for "conditional release or an unconditional discharge." (§ 6608, subd. (a), italics added; see Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, p. 138.) The current law would not automatically require a conditional release as a prerequisite to an unconditional discharge, if the committed person is able to establish that his or her immediate and unconditional release is appropriate.[6] Still, Boyle cites three other changes in the law that we take into account when considering whether the amended SVPA is of a punitive nature.
(11) The analysis that we undertake to determine if the amended SVPA is punitive for purposes of federal constitutional law is the same as that made by the California Supreme Court when it considered a similar challenge to the original SVPA. (See Hubbart I, supra, 19 Cal.4th at pp. 1170-1179.) The categorization of a particular proceeding as civil or criminal is first a question *368 of statutory construction. We determine whether the enacting body[7] meant to establish civil proceedings. Ordinarily, we defer to the stated intent of that body. (12) The Legislature's intended civil purpose is evidenced by its placement of the original SVPA in the Welfare and Institutions Code, not in the Penal Code. Nothing on the face of the original SVPA suggests that our Legislature intended to create anything other than a civil commitment procedure designed to protect the public from harm. (See Hendricks, supra, 521 U.S. at p. 361; Hubbart I, supra, 19 Cal.4th at p. 1171; McKee, supra, 160 Cal.App.4th at p. 1543.) Proposition 83 was titled as a measure intended to punish and control sexual offenders. It specified that the intent of the initiative was to "strengthen and improve the laws that punish and control sexual offenders. (Voter Information Guide, Gen. Elec., supra, text of Prop. 83, pp. 127, 138, italics added.) The amended SVPA retains the basic structurecivil commitment procedures to treat mentally ill persons who have committed acts of sexual violenceand the same placementin the Welfare and Institutions Codeas the original SVPA. Thus, these factors tend to reinforce the amended SVPA's civil label.
However, a civil label is not always dispositive of the question of whether a statute is civil or criminal in nature. An appellant can demonstrate that a statute is so punitiveeither in purpose or in effectthat an expressed civil intent is negated. (See Hendricks, supra, 521 U.S. at p. 361; Hubbart I, supra, 19 Cal.4th at p. 1172; McKee, supra, 160 Cal.App.4th at p. 1543; see also People v. Riffey (2008) 163 Cal.App.4th 474, 485 [77 Cal.Rptr.3d 526].) Boyle argues that because the voters also enacted other, clearly penal measures when adopting Proposition 83's amendments to the SVPA, we should consider the other overtly penal aspects of the initiative as evidence of the voters' intent when amending the SVPA. We disagree. Those enactments were distinct parts of the ballot measure that are not necessarily relevant to our analysis of the punitive nature of the SVPA itself. Even if the other aspects of Proposition 83 were relevant to this analysis, the United States Supreme Court has rejected the claim that a statute's link to criminal activity does not necessarily render that statute punitive. (Hendricks, supra, 521 U.S. at p. 362; see United States v. Ursery (1996) 518 U.S. 267, 270-271, 291-292 [135 L.Ed.2d 549, 116 S.Ct. 2135].)
Commitment under the original SVPA did not implicate either of the two primary objectives of criminal punishmentretribution or deterrence. The restriction of the freedom of the dangerously mentally ill is a legitimate governmental objective that has historically been viewed as nonpenal. *369 (Hendricks, supra, 521 U.S. at pp. 362-363; see Hubbart I, supra, 19 Cal.4th at pp. 1172-1173.) The original SVPA was not retributive because it did not affix culpability for prior criminal conduct, but used that conduct only as evidence of a mental disorder or future dangerousness. (See Hendricks, supra, 521 U.S. at pp. 361-363; Hubbart I, supra, 19 Cal.4th at p. 1175.) The November 2006 amendments to the SVPA did not alter these basic principles.
(13) The existence of a scienter or intent requirement is another important distinction between civil and criminal statutes. Unlike a criminal statute, no scienter or criminal intent is required to commit an individual found to be a sexually violent predator. (Hendricks, supra, 521 U.S. at p. 362; see Pen. Code, § 20 [criminal act requires both act and intent].) The commitment is based on mental disorder rather than criminal intent. (Hendricks, supra, 521 U.S. at p. 362.) The absence of an intent requirement suggests that the SVPA was not intended to be retributive. (Hendricks, supra, 521 U.S. at p. 362; Kennedy v. Mendoza-Martinez (1963) 372 U.S. 144, 168-169 [9 L.Ed.2d 644, 83 S.Ct. 554].) Like the original SVPA, the amended version of this act does not require any showing of criminal intent to trigger application of its provisions.
(14) Likewise, we are satisfied that the amended SVPA was not intended to operate as a deterrent. Persons committed pursuant to sexually violent predator laws suffer from mental disorders preventing them from exercising sufficient control over their conduct. Such individuals are unlikely to be deterred by the threat of civil confinement. (Hendricks, supra, 521 U.S. at pp. 362-363.) The amended SVPA did not make it any more likely that a sexually violent predator would be deterred by its provisions than the original SVPA would.
(15) Although the amended SVPA provides for an indefinite term of civil commitment, that term is not comparable to an indefinite prison term, which has historically been considered punitive. (Hendricks, supra, 521 U.S. at p. 363; Hubbart I, supra, 19 Cal.4th at pp. 1176-1177; McKee, supra, 160 Cal.App.4th at p. 1546.) Likewise, commitment pursuant to the amended law is not a disguised form of punishment because treatment of the committed person is one goal of the law. (See Hendricks, supra, 521 U.S. at pp. 365-368; Hubbart I, supra, 19 Cal.4th at p. 1174; McKee, supra, 160 Cal.App.4th at p. 1544.) Both the original and the amended SVPA provide for treatment as well as confinement of those civilly committed according to its terms. (See § 6604 [Stats. 1995, ch. 763, § 3, pp. 5922, 5925-5926]; Voter Information Guide, Gen. Elec., supra, text of Prop. 83, p. 137.) Hubbart I rejected the assertion that the SVPA provisions for conditional release allowed confinement that likely would last longer than that permitted by the Hendricks court. (Hubbart I, supra, 19 Cal.4th at pp. 1176-1177; see § 6608; *370 McKee, supra, 160 Cal.App.4th at p. 1544.) Even though the burden of proof applicable to some release proceedings is different under the original SVPA and the amended version of that law, we find that the differences between the old and new laws do not render the new SVPA punitive.
The United States Supreme Court has also specifically rejected one of Boyle's concernsthe indefinite term of commitment. Our highest court held that the duration of commitment is not at issue if it is linked to the purpose of that commitmentto hold the individual until his or her mental disorder no longer poses a threat to others. (Hendricks, supra, 521 U.S. at pp. 363-364; Hubbart I, supra, 19 Cal.4th at pp. 1173, 1176; McKee, supra, 160 Cal.App.4th at p. 1544.) Once the confined person is adjudged to be safe to be at large, he or she is statutorily entitled to immediate release. (Hendricks, supra, 521 U.S. at p. 364 [citing applicable Kansas statute]; Hubbart I, supra, 19 Cal.4th at p. 1173; McKee, supra, 160 Cal.App.4th at p. 1544.) The California Supreme Court held thatviewed as a wholethe original SVPA was designed to ensure that the committed person did not remain confined any longer than he or she suffered from a mental abnormality rendering him or her unable to control his or her dangerousness. (Hubbart I, supra, 19 Cal.4th at p. 1177; McKee, supra, 160 Cal.App.4th at pp. 1544-1545.)
Thus, as long as the amended SVPA provides a committed person with a means to obtain release once he or she no longer meets the definition of a sexually violent predator, it will likely be viewed as a civil statute focusing on treatment, rather than a punitive law. As we have already concluded when rejecting Boyle's due process challenge to the amended SVPA, the burden of proof required by current law for unauthorized petitions for release is constitutionally adequate. (See pt. II.B., ante.) For the same reason, we find that the shifted burden of proof is not evidence of a punitive intent or effect.
(16) Boyle also complains that under the amended SVPA, he has no right to a jury trial on any petition seeking release or discharge without DMH authorization. This petition is determined by the court, without a jury. (See § 6608, subd. (d).) At an initial commitment hearing and when any DMH-authorized petition is determined, Boyle has a right to a jury trial. (See §§ 6603, subd. (a), 6604, 6605, subd. (d).) The voters, when enacting Proposition 83, stated that one purpose of the amendments to the SVPA was to eliminate "unnecessary or frivolous jury trial actions where there is no competent evidence to suggest a change in the committed person." (Voter Information Guide, Gen. Elec., supra, text of Prop. 83, p. 127.) We are satisfied that the limitation on jury trials of release and discharge petitions to those committed persons who are able to meet threshold requirements warranting DMH-authorized petitions does not render the amended SVPA a punitive statute, despite its civil label.
*371 When the state disavows any punitive intent, limits confinement to a small segment of particularly dangerous individuals, provides strict procedural safeguards, directs that confined persons be segregated from the general prison population and afforded the same status as others who have been civilly committed, recommends treatment if the condition is treatable, and permits immediate release on a showing that an individual is no longer a danger or mentally impaired, the United States Supreme Court cautions against imputing any punitive intent. (Hendricks, supra, 521 U.S. at pp. 368-369.) That is the situation presented by the amended SVPA. We are not persuaded that the voters understood that Proposition 83's amendments to the SVPA made it a punitive measure. (See, e.g., McKee, supra, 160 Cal.App.4th at p. 1545.)
(17) As many of the factors to be considered are the same under the original and amended SVPA, we are satisfied that the latest version of the law is not punitive within the meaning of the federal constitutional bans on ex post facto laws and double jeopardy. (See Hendricks, supra, 521 U.S. at pp. 360-369.) Thus, Boyle has not demonstrated that the SVPA implicates ex post facto concerns. (See Hubbart I, supra, 19 Cal.4th at p. 1179; McKee, supra, 160 Cal.App.4th at p. 1546; see also People v. Riffey, supra, 163 Cal.App.4th at pp. 483-486.)
(18) Boyle also contends that an amended SVPA commitment constitutes double jeopardy. (See U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.) The double jeopardy clause of the federal Constitution prohibits punishing any individual twice for the same offense. (Hendricks, supra, 521 U.S. at p. 369; Witte v. United States (1995) 515 U.S. 389, 395-396 [132 L.Ed.2d 351, 115 S.Ct. 2199].) However, we have already determined that commitment under the SVPA is civil in nature rather than punitive. (19) An SVPA commitment does not constitute a second prosecution within the meaning of the ban on multiple punishment. (See Hendricks, supra, 521 U.S. at p. 369; Hubbart I, supra, 19 Cal.4th at pp. 1171-1177; Hubbart II, supra, 88 Cal.App.4th at p. 1226.) As we have found that the amended SVPA is not punitive, both Boyle's ex post facto and double jeopardy claims are meritless. (See Hendricks, supra, 521 U.S. at pp. 360-361, 369-370.)

D. Equal Protection

1. Contentions on Appeal

Alternatively, Boyle argues that the amended SVPA[8] violates equal protection because of the differences between it and other civil commitment *372 schemes. He argues that the commitment of sexually violent predators differs significantly from the commitments of mentally disordered offenders (MDO's), those found not guilty by reason of insanity (NGI's), and those dangerous mentally ill persons committed pursuant to the more general Lanterman-Petris-Short Act (LPS Act; § 5000 et seq.). He reasons that the distinctions between the SVPA and these other commitment schemes treat similarly situated persons in a markedly different manner, in violation of his state and federal constitutional rights to equal protection of the laws. (See U.S. Const., 14th Amend.; Cal. Const., art. I, § 7; Pen. Code, §§ 1026-1027, 2960-2981; Welf. & Inst. Code, §§ 5000-5550.)
Our Supreme Court has already upheld the original SVPA against an equal protection challenge. (Hubbart I, supra, 19 Cal.4th at pp. 1168-1170; see Hubbart II, supra, 88 Cal.App.4th at pp. 1209, 1216-1225.) In this appeal, Boyle argues that under the amended SVPA, the various commitment schemes were no longer on an equal footing in California. He notes that the original SVPA and the other commitment schemes all relied on a finite term of commitment after which the state was required to prove the continued need for commitment. The amended SVPA violates equal protection, Boyle reasons, because it requires an indefinite term of commitment andin some circumstancesrequires the committed person to assume the burden of proving that he or she should be released, without a right to a jury trial on that issue.

2. Not Similarly Situated

(20) The first requirement of a successful equal protection claim is to show that the state has adopted a classification that affects similarly situated groups in an unequal manner. (Cooley v. Superior Court, supra, 29 Cal.4th at p. 253; McKee, supra, 160 Cal.App.4th at p. 1547; Hubbart II, supra, 88 Cal.App.4th at p. 1216.) If the persons are not similarly situated for purposes of the law, then the equal protection claim necessarily fails. (People v. Buffington (1999) 74 Cal.App.4th 1149, 1155 [88 Cal.Rptr.2d 696].) This initial inquiry focuses not on whether persons are similarly situated for all purposes, but whether they are similarly situated for purposes of the law being challenged. (Cooley v. Superior Court, supra, 29 Cal.4th at p. 253; People v. Buffington, supra, 74 Cal.App.4th at p. 1155.) In our case, we must consider whether the persons are similarly situated for purposes of the laws governing commitments and judicial review of those commitments. (People v. Riffey, supra, 163 Cal.App.4th at p. 490.)
(21) Those committed as sexually violent predators are not similarly situated to persons committed as MDO's. The MDO law targets those with *373 severe mental disorders that may be kept in remission with treatment, while the amended SVPA acknowledges that persons committed pursuant to its authority have mental disorders that may never be successfully treated. (See Hubbart II, supra, 88 Cal.App.4th at p. 1222; People v. Buffington, supra, 74 Cal.App.4th at p. 1163; see also Pen. Code, § 2962, subd. (a); Welf. & Inst. Code, § 6606, subd. (b); People v. Johnson (2008) 162 Cal.App.4th 1263, 1286 [76 Cal.Rptr.3d 882].) When enacting the amended SVPA, voters acknowledged that sexually violent predators differ from other civilly committed persons because of the likelihood that they will reoffend. The voter information guide for Proposition 83 noted that sexually violent predators have very high rates of recidivismmuch higher than the rates for other violent felons. Sexually violent predators are also more resistant to treatmenta fact that the voter information guide also noted when it reported that they were among the least likely offenders to be cured. (See Voter Information Guide, Gen. Elec., supra, text of Prop. 83, p. 127; see also People v. Johnson, supra, 162 Cal.App.4th at p. 1285; McKee, supra, 160 Cal.App.4th at p. 1549.) Such predators can strike any time and victimize even strangers, posing a greater danger to the public at large than the more typical sexual offender who commits crimes against family members or close acquaintancespersons who may be made aware of the offender's status as a sex offender. (See People v. Johnson, supra, 162 Cal.App.4th at p. 1286.) This heightened level of dangerousness and the unique treatment needs of SVP's may be taken into account when considering whether persons are similarly situated for purposes of equal protection. (See id. at p. 1285; see also State v. Post (1995) 197 Wis.2d 279, 321 [541 N.W.2d 115, 130], cert. den. sub nom. Post v. Wisconsin (1997) 521 U.S. 1118 [138 L.Ed.2d 1011, 117 S.Ct. 2507].) These contrasting treatment expectations support the conclusion that MDO's and sexually violent predators are not similarly situated for purposes of Boyle's equal protection challenge to the varying terms of commitment and the differing release procedures of these two commitment schemes. (See Hubbart II, supra, 88 Cal.App.4th at p. 1222; see also People v. Riffey, supra, 163 Cal.App.4th at p. 491; People v. Buffington, supra, 74 Cal.App.4th at pp. 1162-1164.)
(22) Those committed pursuant to the amended SVPA are not similarly situated with those committed after a finding of not guilty by reason of insanity. An NGI's involuntary civil commitment is the direct consequence of a criminal actthe commitment forms an alternative to the prison term that would have been imposed if the NGI had been found to have been sane at the time of the commission of the underlying crime. (See Pen. Code, § 1026.) The mental illness of an NGI must exist during prior conduct, while the amended SVPA applies only if the individual poses a future risk that he or she will reoffend. (See Pen. Code. § 1026; Welf. & Inst. Code, § 6600, subd. (a)(1).) The differing definitions of those coming within the amended *374 SVPA and the NGI commitment scheme pose different treatment requirements and may properly trigger different commitment terms and release procedures without offending equal protection of the laws. (See McKee, supra, 160 Cal.App.4th at pp. 1550-1551; see also People v. Riffey, supra, 163 Cal.App.4th at p. 492.)
(23) Those committed under the terms of the amended SVPA are not similarly situated with those committed pursuant to the general LPS Act. The Legislature created these two acts with very different purposes in mind. The LPS Act provides for evaluation and treatment of mentally ill members of the general public in a wide range of circumstances. By contrast, the amended SVPA targets a narrow class of extremely dangerous sexually violent predators who are incarcerated in state prison at the time that they enter civil commitment. (Cooley v. Superior Court, supra, 29 Cal.4th at p. 253; see Stats. 1995, ch. 763, § 1, p. 5921.) The focus and length of LPS Act treatment vary widely, as different members of the general population require evaluation and treatment for differing lengths of time. (§§ 5150, 5250, 5260, 5300, 5350; see Cooley v. Superior Court, supra, 29 Cal.4th at p. 253.) Those committed pursuant to the amended SVPA require more focused treatmentif the individual is even amenable to treatmentand, because these offenders are often resistant to treatmentthat treatment usually takes place over a longer period of time. (See Voter Information Guide, Gen. Elec., supra, text of Prop. 83, p. 127; see also McKee, supra, 160 Cal.App.4th at p. 1549.) Thus, persons committed under these two acts are not similarly situated either for purposes of entry into the respective commitment systems, or for purposes of the treatment they receive while in those systems. (See Hubbart II, supra, 88 Cal.App.4th at p. 1222; see also People v. Buffington, supra, 74 Cal.App.4th at pp. 1162-1164.)
Boyle has not demonstrated that a sexually violent predator committed pursuant to the amended SVPA is similarly situated to a person committed as an MDO or an NGI or as one committed under the terms of the LPS Act.[9] (See People v. Johnson, supra, 162 Cal.App.4th at pp. 1283-1286; see also People v. Riffey, supra, 163 Cal.App.4th at pp. 489-492.) Without this *375 finding, he cannot establish any equal protection violation stemming from the indefinite term of commitment or the release procedures challenged in this appeal. (See, e.g., Hubbart II, supra, 88 Cal.App.4th at pp. 1221-1222.)

III. OTHER ISSUES[*]
The commitment order is affirmed.
Sepulveda, J., and Rivera, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.
[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] As appears to be the practice in such cases, Boyle argues that the amended SVPA violates both the federal and state Constitutions, but makes no separate argument pertaining to any state constitutional issues. We presume that the standards applicable to his federal constitutional challenges apply equally to resolve those challenges based on the state Constitution. (See Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 1152, fn. 19 [81 Cal.Rptr.2d 492, 969 P.2d 584] (Hubbart I).)
[3] The amended SVPA also permits a committed person to petition for unconditional release, although the procedures set out in that act focus on petitions for conditional release. (See § 6608, subds. (d)-(f); but see § 6608, subd. (g) [if court denies petition for unconditional release, it may consider conditional release instead]; see also pt. II.C., post.)
[4] As the issues on appeal relate only to the SVPA as amended in November 2006, we refer to thisthe current version of the lawas the "amended SVPA."
[5] California law goes further, requiring that the state prove the need for an initial civil commitment by proof beyond a reasonable doubt. (§ 6604.)
[6] The amended SVPA may be silent on some aspects of the procedures to apply when a committed person files a non-DMH-authorized petition for unconditional discharge, as most of the statutory procedures appear to focus on evaluation of a petition for conditional release. (See § 6608, subds. (d)-(f); see also § 6608, subd. (g) [if court denies petition for unconditional release, it may consider conditional release].) If a statute is silent, we construe it in a manner that is consistent with applicable constitutional provisions, so that the statute may be upheld. (People v. Globe Grain & Mill. Co. (1930) 211 Cal. 121, 127 [294 P. 3]; see 7 Witkin, Summary of Cal. Law (10th ed. 2005) Constitutional Law, § 118, p. 224.) Consistent with this obligation, we presume that if a committed person filed an unauthorized petition and could establish that he or she was no longer mentally ill or no longer dangerous, the trial court would be required to order his or her unconditional release. (See Foucha, supra, 504 U.S. at pp. 77-78 [state cannot hold dangerous person who is no longer mentally ill]; Jones, supra, 463 U.S. at pp. 368, 370; O'Connor v. Donaldson, supra, 422 U.S. at p. 575 [state may not confine harmless mentally ill person]; see also pt. II.B., ante.)
[7] In most cases, courts attempt to determine the statutory intent of the Legislature. In this matter, as the voters enacted Proposition 83, it is their intent that we must try to ascertain. (See Robert L. v. Superior Court (2003) 30 Cal.4th 894, 900-901 [135 Cal.Rptr.2d 30, 69 P.3d 951]; People v. Litmon (2008) 162 Cal.App.4th 383, 407-408 [76 Cal.Rptr.3d 122].)
[8] In fact, he argues that both the September and November 2006 amendments are constitutionally deficient. As the September 2006 amendments were superseded by those enacted in November 2006the law that applies to Boyle's casewe concern ourselves only with the SVPA as it was amended in November 2006. (See fn. 2, ante.)
[9] Boyle argues that California Supreme Court authority compels a contrary conclusion, contending that the amended SVPA alone among civil commitment schemes establishes an indefinite term of commitment without periodic reviews and recommitment hearings. (See In re Moye (1978) 22 Cal.3d 457, 465 [149 Cal.Rptr. 491, 584 P.2d 1097].) His argument ignores the fact that the amended SVPA provides for periodic departmental and judicial review of whether continued commitment is appropriate. The amended SVPA mandates annual reviews, establishes a procedure for DMH-authorized petitions for release in clear cases when release is warranted, and allows a committed person to obtain a determination from a neutral court about whether release is appropriate even if the DMH does not concur in that individual's view that he is no longer a sexually violent predator. (See §§ 6605, 6608.) Thus, Boyle's cited authority is distinguishable.
[*] See footnote, ante, page 348.